Charles Margett, J.
In an action to recover damages for
personal injuries sustained by the infant plaintiff and for loss of services and medical expenses incurred by his father, the plaintiffs move for summary judgment on the issue of liability and for an assessment of damages by a jury.
The infant plaintiff, an 11-year-old-bov, was playing “ ho ola hoop ” with a friend on the public sidewalk in front of the defendant’s residence, located in the vicinity of his home, shortly after 5 o ’clock in the afternoon of September 8, 1958, when the defendant’s dog came out on the sidewalk, jumped and bit him on the stomach and right leg.
The plaintiffs’ motion is made on the pleadings, the affidavits of the respective plaintiffs, the bill of particulars and the deposition of the defendant’s wife, Emma Babai. The opposing affidavit, however, is by an attorney associated with the attorneys representing the defendant. He does not speak from personal knowledge and fails to explain the absence of an affidavit by the defendant or by someone having knowledge of the occurrence, as required by subdivision 2 of new rule 113 of the Buies of Civil Practice, effective on March 1, 1959. Said attorney, however, relies upon the deposition of the defendant’s wife who, he says, “ does not know exactly what happened * * * inasmuch as she was by or in the kitchen of her home at the time the accident occurred.” Mrs. Babai testified, however, when asked whether she actually saw the dog bite the Haberman boy: “A. Well, I was standing by the kitchen and I was all excited *1094 when something like that happens. I know the dog went for the boy, but as far as what really happened, I was <—
“ Q. To the best of your knowledge did anybody in your family see the accident at that time? A. Well, my husband, yes.
“ Q. Tour husband actually saw the accident? A. Well, I did too, but it’s just like when he bit my arm. He bit it, but you get so excited and everything you don’t want anything to happen.
“ Q. Mrs. Bahai, exactly where did this happen? A. Well, it happened right by the fence in my home and the outside.
“ Q. On the outside of your fence, on the sidewalk? A. On the sidewalk,
* * #
“ MB. MONTFOBT; Was he inside or outside the fence? A. He would be outside the fence.
“ Q. Which would make it on the sidewalk? A. Yes.
“ Q. Your fence adjoins a sidewalk? A. Yes, it would be outside the fence.”
This dog was acquired by the defendant, according to the testimony of his wife, some time in July, 1958. The dog was a large full-grown Dalmatian and the very day that he was brought home he bit her on the left arm as she fed him. The dog subsequently bit her 18-year-old daughter Shirley and her son Bela without, however, injuring them. He also “ bit one boy that belonged in Bela’s classroom. The child came over to call for little Bela.”
It was stipulated at the conclusion of Mrs, Bahai’s examination before trial that- the defendant was the owner of the dog in question when the occurrence complained of took place and that her testimony ‘ ‘ will serve in lieu of further testimony of her husband.”
‘ ‘ In civil cases it has always been the rule that the liability of an owner of a ferocious animal, whether ferae naturae or domitae (see 28 C. J. S., p. 52) which attaches for injury done to a third person, is absolute where such animal is kept with the owner’s knowledge of its ferocious propensities, and it is not shown that the person injured voluntarily or consciously did anything to bring about the injury. Muller v. McKesson (73 N. Y. 195, 199-202) and Molloy v. Starin (191 N. Y. 21, 24-25) each of which cites and collates many cases and- authorities; see, also, Yachel v. Nys (258 App. Div. 318); Crowley v. Groonell (73 Vt. 45, 47, supra).” (People v. Sandgren, 302 N. Y. 331, 339-340; see, also, Silber v. Seidler, 19 Misc 2d 516.) No.evidence of any kind has been adduced by the defendant- tending to show that the infant plaintiff did anything to provoke the dog, The boy had the right to play as he did on the public sidewall? and *1095 the defendant was negligent in keeping an animal which to his knowledge had bitten three members of his family as well as his son’s classmate. In Muller v. McKesson(73 N. Y. 195), cited in People v. Sandgren (sugra), the court held that the gravamen of an action such as this is the keeping, of the animal, with knowledge of its propensities. Chief Judge Church observed in that connection, at page 199 of his opinion in the Muller case (supra): — “In May v. Burdett (9 Ad. & El. [N.S.], 101), Denman, Ch. J., said: ‘ But the conclusions to be drawn from an examination of all the authorities appears to us to be this, that a person keeping a mischievous animal, with knowledge of its propensities, is bound to keep it secure at his peril, and that if he does mischief, negligence is presumed. ’ ”
It is argued, on behalf of the defendant, that since the conceded previous bites by this dog did not result in injury “ these alleged bites are not bites at all”; that the bite .sustained by Mrs. Babai when she was feeding the dog on the day he was brought home “ does not indicate any viciousness on the part of the dog since it was a nip when the dog was about to be fed by a strange person.”
In Coleman v. Blake (128 N. Y. S. 2d 780, 781) the plaintiff was' bitten by the defendant’s cocker spaniel called “ Brucie ” when she was a guest at its owner’s home. “ Brucie ” was described as “ angelic looking ” but “ snappy ”. In fact, according to the trial court, Mr. Justice McG-ivern, “ ‘ Brucie ’ had a past, with one known bite to his credit. After the flurry of introductions,' in the polite badinage that ensued the plaintiff was informed that the dog was nburotio and not to be patted. However, the animal was in no way tethered by his masters, and was permitted full run of the house. Awaiting dinner, the plaintiff proceeded to play with the dog, and the animal fetched a ball which the plaintiff would throw and which he would retrieve. * * *
“ Came the dinner hour and while seated at the table, the plaintiff, Mrs. Coleman, proffered the dog a bit of cheese. Man’s best friend rewarded her affection by taking a bite out of her proboscis, and in so doing nipped a beautiful friendship in its origins; for the plaintiff now seeks damages of her quondam hosts.”
In rendering judgment in favor of the plaintiff, Mrs. Coleman, the court held that she “ did not place herself in the way of the canine and he, despite his past, was restrained not at all by his owners. Knowing dog’s waspish nature and a bite of record, he should have been secured in the presence of a stranger. Any other view would be antithetical to a long list of holdings.”
*1096 The foregoing applies with greater force to the case at. bar. The infant plaintiff did not place himself in the way. of the dog. He was playing on a public sidewalk when injured. Whatever the physical consequences of the several previous bites indulged in by this Dalmatian, they clearly indicated his propensities to the defendant.
The motion is, accordingly, granted and an assessment of damages ordered by a jury as demanded, upon compliance with the Statement of Beadiness Bule and the payment of all fees necessary to place the case upon the calendar.
Submit order.