OPINION OF THE COURT
Ariel E. Belen, J.
Plaintiff, Anthony Vannucci, is the son of the defendants Louis and Catherine Vannucci. On March 6, 1995, while visiting with his parents in their living room, Anthony Vannucci *183 was savagely bitten by his parents’ pet dog Samson, who was apparently roaming the house unfettered. Defendants here move for summary judgment upon the ground that plaintiff was aware of Samson’s penchant for biting.
It is undisputed that Samson had bitten before this incident and that he had in fact bitten plaintiffs sister Lisa approximately one year earlier. It appears from the deposition segments annexed as exhibits that plaintiff resided with his parents and Samson at the time Samson bit Lisa. It is acknowledged that plaintiff and defendants were all aware of this prior biting incident.
There is a long-established rule in New York that a pet owner may be held strictly liable for an injury inflicted by an animal if it is established that the animal had vicious propensities and that the owner knew or should have known of the animal’s vicious propensities. (Carter v Metro N. Assocs., 255 AD2d 251 [1st Dept 1998].) In People v Sandgren (302 NY 331 [1951]), the Court of Appeals reinstated manslaughter charges against an owner of some dogs used to guard his property when the dogs killed a child. The Court quoted Exodus, chapter 1, verses 28, 29, as follows:
“ Tf an ox gore a man or a woman that they die: then the ox shall be surely stoned, and his flesh shall not be eaten but the owner shall be quit.
“ ‘But if the ox were wont to push with his horn in time past, and it hath been testified to his owner, and he hath not kept him in, but that he hath killed a man or a woman; the ox shall be stoned, and his owner also shall be put to death.’ ” (People v Sandgren, at 340, n.)
Both elements required to impose strict liability on the defendants pursuant to the common-law rule are present in this case. The dog Samson had vicious propensities, as evidenced by his earlier biting of plaintiffs sister, and the defendants knew of these propensities. Nonetheless, defendants contend that they cannot be held liable for Anthony’s injuries because Anthony was himself aware of Samson’s vicious propensities, citing Muller v McKesson (73 NY 195 [1878]) and Hosmer v Carney (228 NY 73 [1920]) to support the proposition that an injured person is barred from recovery if he wantonly excites an animal or voluntarily or unnecessarily puts himself in the way of an animal.
In this case, plaintiff denies having provoked Samson and defendants have not presented any evidence to the contrary. *184 Defendants’ motion to dismiss then would be based solely upon the ground that by the mere act of going to his parents’ house knowing that a dangerous dog was on the premises, plaintiff voluntarily put himself in the way of the animal and thus cannot recover. In other words, plaintiff assumed the risk of Samson’s biting him.
The cases cited by defendants do not support such an outcome in this case. In Hosmer v Carney (supra), the plaintiff purchased a horse known to be a kicker. A person who knowingly purchases an animal reputed to be dangerous and is then injured by it, cannot be compared to a person who merely visits the home of the owners of such an animal. Even the Muller v McKesson case (73 NY, supra, at 202), cited by defendant, states, “[b]ut as the owner is held to a rigorous rule of liability on account of the danger to human life and limb, by harboring and keeping such animals, it follows that he ought not to be relieved from it by slight negligence or want of ordinary care. To enable an owner of such an animal to interpose this defense, acts should be proved with notice of the character of the animal, which would establish that the person injured voluntarily brought the calamity upon himself.”
Indeed in Muller (supra), plaintiff, a night watchman, recovered from the owner of a vicious guard dog since no one had advised the plaintiff that the dog had not been tied up as usual that evening. The Court imposed no duty on plaintiff to ascertain whether the dog, who had known vicious propensities, was secured.
Furthermore, these cases were adjudicated long before the enactment of CPLR article 14-A, which provides that as to all causes of action accruing on or after September 1, 1975, “the culpable conduct attributable to the claimant or to the decedent, including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages.” (CPLR 1411; see, Arbegast v Board of Educ., 65 NY2d 161 [1985]; Pisciotta v Parisi, 155 AD2d 422 [2d Dept 1989], where it was held to be error not to submit the issue of comparative negligence to the jury where plaintiff was bitten while attempting to pet a chained dog.)
Plaintiff’s personal knowledge of Samson removes this case from those situations where strict liability must be imposed. He was a resident of his parents’ home when the dog bit his *185 sister. Questions of fact exist as to whether plaintiff was comparatively negligent by voluntarily interacting with Samson, knowing of Samson’s potentially violent propensities, or whether he was aware that Samson was roaming unfettered in the house while he visited.
Accordingly, defendants’ motion for summary judgment is denied and plaintiff’s cross motion for summary judgment is denied.